METCALF *v.* METCALF.

DIVORCE — EXTREME CRUELTY — WHERE BOTH PARTIES GUILTY NEITHER ENTITLED TO RELIEF.

Where, in wife's suit for divorce on the ground of husband's extreme cruelty, the record shows that both parties were at fault, and no statutory cause was shown to which plaintiff did not contribute, a decree in favor of the wife was not justified; neither party being entitled to relief.[1]

Appeal from Calhoun; Murphy (Alfred J.), J., pre-

[1]Divorce, 19 C. J. § 175.

siding.    Submitted April 20, 1926.    (Docket No. 119.)    Decided June 7, 1926.

Bill by Lucille H. Metcalf against Harold C. Metcalf for a divorce.    From a decree for plaintiff, defendant appeals.    Reversed.

*Andrew W. Lockton,* for plaintiff.

*Verner W. Main* (*Burritt Hamilton,* of counsel), for defendant.

McDONALD, J.    Harold C. Metcalf has appealed from a decree granting the plaintiff a divorce on the ground of extreme cruelty.    After an acquaintance and a courtship of several years' duration the parties were married on the 22d of October, 1921.    They lived together until about July 18, 1924.    They have had no children.    The bill alleges that shortly after their marriage the defendant's attitude towards her changed into coldness and indifference; that he would remain away from his home on Sundays; that he would come home for dinner at irregular and unexpected hours; that he was sullen and disagreeable; that he would sit at the dinner table in absolute silence, refusing to even answer polite questions; that he frequently flew into a violent temper, during which he would walk the floor for an hour at a time, "white with angry rage, clicking his fingers, clapping his hands and almost beyond reason," that he was ugly and unreasonable and refused to discuss family problems; that he would swear and quarrel over trifling matters; that on two occasions he locked her out of their bedroom, and on one occasion, when she was absent at church, he threw her clothes out into the hall; that he seldom went out with her and was rude to visiting friends.    The defendant answering denied the allegations of the bill and alleged various acts of the plaintiff, which it is claimed preclude her right to a decree for divorce.

Our reading of the record leads us to the belief that the plaintiff has been over extravagant in her charges concerning the shortcomings and misconduct of the defendant. This is illustrated by her charge that he locked her out of their room on two occasions and on one occasion threw her clothes out into the hall. The explanation of these incidents greatly detracts from the significance which naturally would be given to them as acts of cruelty. The parties occupied the same bed. It seems that in his sleep the defendant was inclined to crowd the plaintiff, and that on such occasions she would punch him back into place with her elbow. One night her elbow hit him in the eye. It was a rude awakening, and the defendant retaliated the next night by locking her out. After she had pounded on the door awhile, he admitted her, and she proceeded to give him a good shaking. Under the circumstances, this conduct on the part of the defendant was not so cruel as it was foolish. But they were both at fault in resorting to harsh measures when they could have solved the whole trouble by installing twin beds. On the occasion of the second lockout, she came in late at night. She was in the habit of going out frequently and staying late. There was no question as to her high moral character or the respectability of the place to which she was accustomed to go. The defendant knew this, but he did not approve, and foolishly expressed his disapproval by denying her admission to their room. She went to another room, and in view of his disposition to occupy more than a fair share of the bed, she probably enjoyed a better sleep than she would have had if she had stayed with him. However, his conduct was not proper, and its natural tendency would be to injure her feelings.

The importance of these incidents is not so much in their cruel character as it is in their tendency to

show a disposition on his part to retaliate. And the same thing may be said of her. He locked the door of their room against her. She gave him a good shaking; he said something to her on the street that displeased her, and she struck him; he crowded her in bed and she punched him in the eye with her elbow. In their behavior towards each other these people seem to have lived a sort of tit for tat life. And while he appears to have been more to blame, she contributed her share to their domestic troubles. This is evidenced by her habit of going out evenings, coming home at a late hour, and failing to get up in the morning in time to prepare his breakfasts. During the last nine months that they lived together, the evidence is undisputed that she was away from home 148 evenings, and that she usually returned at a late hour. That at such times she was engaged in Y. W. C. A. work does not lessen its disastrous effect upon their home life. While she should be commended for her interest in philanthropic work, it ought not to have been carried to such an extent as to interfere with her home duties. On the other hand, if the defendant had used a little tact and some common sense, we are convinced that he could have smoothed over and prevented many of the causes of domestic discord. The plaintiff appears to be a woman of a highly sensitive and nervous temperament, and undoubtedly the defendant's conduct made her very unhappy. But we cannot say that he alone is responsible for the unfortunate situation in their home. It was the result of their joint efforts. The mother-in-law had nothing to do with it, and there was no occasion for any slighting reference to her in the brief of counsel.

While apparently the marriage tie which binds these parties together, "for better or for worse," has become hateful to the plaintiff, we cannot consent that it be legally severed without positive evidence of some

serious statutory cause to which she did not contribute. They were each 31 years of age when they were married. They had kept company for 10 or 11 years. They were both eminently respectable. From what we have learned of them in this record we are convinced that if, instead of acting like a couple of spoiled children, they had exercised that mutual forbearance so necessary to the marital relation they would have succeeded in establishing a happy home. As both are in fault, neither is entitled to relief. The plaintiff's bill should be dismissed.

The decree of the circuit judge is reversed, without costs.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.